———o———

No. 6986.

## FLORENCE HEINRICH v. WM. F. KEFF,

### Syllabus.

A party who advises another as an act of friendship to invest his money in a mortgage note, and who himself invests his own money in the same mortgage, is not responsible, for an error of judgment and in the absence of fraud, if the property mortgaged proves insufficient to pay the mortgage.

Appeal from the Civil District Court, Parish of Orleans, No. 112,499, Division "C"; Honorable E. K. Skinner, Judge. Affirmed.

Florence Loeber, for plaintiff and appellant.

Wm. V. Seeber, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

This is a damage suit for alleged negligent investment by defendant of plaintiff's money by reason of which she lost $667.44.

The plaintiff alleged that on September 15th, 1909, she was living with her brother, Jacob Heinrich, and with defendant who is her uncle; that she was the owner of a sum of $2350; that she informed the defendant that she desired to invest her money in a house; that he urged her not to do so as she would get no revenue owing to taxes, repairs, insurance, sidewalk regulations, and other expenses; but to let him invest it for her in mortgage notes, which were absolutely safe, and yielded seven or eight per cent interest which was paid regularly; that she was ignorant of business, and never knew what mortgage notes were, but yielded to defendant's request and placed her money in his hands for investment in mortgage notes; that on November 16th, 1909, defendant informed her that he had secured notes for $3600 bearing seven per cent interest secured by mortgage on a two-story house worth not less than $4800, and that he would supply the sum necessary above $2350 to complete the $3600; that upon defendant's assurance that the house securing the payment of the notes was a two-story building and was worth not less than $4800 she placed her money in his hands to purchase said notes, her joint interest to be 2350/3600; that on January 15th, 1911, the defendant confessed to her that he had never seen the house, and that in truth it was only a one-story cottage and that it was not worth the amount of the notes; that

290

on June 25th, 1913, defendant accepted the property in payment of the notes; and surrendered the notes to the maker without her knowledge or consent; that on the same day the defendant in writing declared that he was owner of the property only for 1000/3600; that Jacob Heinrich was owner for 250/3600; that she, petitioner, was owner for $2350/3600; that she accepted this transfer because it was the best thing she could do under the circumstances; that in a partition suit she caused this property to be sold at auction, and that it realized only $2000; that she received as her share of the price only $1191.27; that in addition to said sum she received from the defendant at various times $329.25, $35.85, and $126.19, making a total of $1682.56 leaving a balance due of $667.44

which the defendant owes her with interest

from November 16th, 1909.

|   |   |
|---|---|
| ( | $1191.27 |
| ( | $ 329.25 |
| ( | $ 35.85 |
| ( | $ 126.19 |
| ( | ———— |
| ( | $1682.56 |
| ( | $ 667.44 |
| ( | ———— |
| ( | $2350.00 |

For answer the defendant denied any indebtedness to plaintiff, admitted that he had advised plaintiff not to invest in real estate, but denied that he had advised her in the matter at all; he alleges that he informed the plaintiff that a certain notary had stated to him that he had a mortgage note for $3600 bearing seven per cent interest secured by vendor's privilege on two lots measuring together 56' 10" on Arts between Johnson and Grant Streets together with a double cottage thereon, of which mortgage the plaintiff was fully aware; that her brother and he had in-

vested money in the same note; he denies that he told plaintiff that the house was a two-story building or that it was worth $4800, but avers that on the contrary he told her exactly what the property was, and she was satisfied with it; he admits that he accepted the property in payment and alleges that it was with her consent, and that she received a counter-letter showing her interest in the property; he further admits that the plaintiff filed a partition suit, but that he was at all times willing to sell the property at private sale to save the costs of a partition; that they were offered the sum of $2800 at private sale which plaintiff refused to accept, and that he had offered to buy the property for $2500 which plaintiff also refused.

There was judgment for defendant and plaintiff has appealed.

The first document that attracts our attention is a notarial act of sale dated February 27th, 1909, by F. L. Goodwin, to August Lais of the property above described for the price of $4150, of which the purchaser paid $350 cash, and for the balance $3800 uttered his five notes, two for $300 each, two for $400 each, and one for $2400. These were the notes defendant bought.

The plaintiff's action is based on the negligence and fraud and deception of the defendant, negligence in not knowing that the property was not worth more than $3600, and deception in having told her that the property was a two-story building and was worth $4800.

Defendant can hardly be charged with negligence, when the act of sale to Lais was for $4150. Under the circumstances he can only be charged with gross negligence amounting to fraud; he cannot be made liable for a mere error of judgment. His good faith is established by the

292

fact that he contributed $1000 of his own money in the investment. 11 *A.*, 170; 18 *L.*, 58; 4 *M.*, 58.

The plaintiff testified that she acted under the advice of her brother and of her uncle; that her uncle told her that the mortgage was "on a two-story house that was worth $4800"; she works in a tobacco factory; has been working since the age of 14.

Mr. Parkerson testified that the defendant admitted to him that he had not seen the property before he made the investment; that he had gone down to see the property, but that he had looked at the wrong one, but did not tell him what kind of property it was; the defendant offered to pay plaintiff $2000 for her interest, which she refused, though Mr. Keff considered in doing so that he was offering her more than her interest was worth.

Mr. Walter S. Lewis, Notary, representing Mrs. J. M. Pagaud, sold these notes to the defendant; the house had been recently built by his brother-in-law, F. L. Goodwin; from the information he had he thought Mr. Keff was making a fair investment; he had then a memorandum showing how much the property cost to build.

The defendant testified that he told plaintiff that he could buy some notes to the amount of $3600 secured by mortgage on a double cottage house with an octagon on the side and two lots of ground, and he thought the property was well worth it; it was a brand new house; he offered her $2000 for her interest and with the money she had already received she would have been even; he is a tank builder and 68 years old; he did not advise plaintiff to invest in these notes; he mentioned his conversation with Mr. Lewis about these notes and she urged him to buy the

notes as she getting only 3½ or 4% interest on her money in the bank.

Jacob Heinrich is in the cistern business, plaintiff's brother; his sister complained that she was only getting 3½ per cent interest on her money and she would like to get 7½ or 8% like Mr. Keff; these notes of $3600 turned up, and Mr. Keff put in $1000, he put in $250, and his sister put in $2350; he thought at the time it was a good investment; Mr. Keff told him at the time that Mr. Lewis had told him that it was a very good investment; he told him the value was $4200; that it was a double cottage on two lots with an octagon on the side.

Plaintiff has failed to prove her allegations as to the representations by the defendant to her concerning the nature of the house and its value. They constituted her only cause of action; without them she must fail.

In the transactions between the plaintiff and the defendant we fail to perceive the relations of principal and agent; we can only see the offices of friendly suggestion or advice which entail no responsibility on the party giving the advice in good faith, and in the absence of fraud.

In *Domat's Civil Law*, *Bk.* 1, *tit. XV*, *Sec. I s.* 13, *p.* 358, we read:

> "We must distinguish procuration, mandates, and commissions where an express charge is given with the intention of forming a binding contract, and the methods of persuading by an advice, by a recommendation or by other means which carry with them no intention of making a contract, but which concern exclusively the interest of the person to whom the advice is given, or that of the person recommended, and which leave complete liberty to do or not to do

294

that which is advised or recommended. Because in such a case there is no contract, and he who follows the advice, or who accords something to a recommendation, does not expect a guaranty of the event."

*Troplong du Mandat, p. 24, s. 14*, says:

"In consequence of this appreciation we must decide that the person who renders a service out of pure kindness or humanity does not bind himself either as an agent or lessor."

S. 15: "Thus Ulpian teaches dogmatically that in order that the act should take the character of a mandate, it is necessary that the person entrusted with the interests of another had intended to act as an agent by name; for if he has intended to give only warnings dictated by friendship, or even advice, he has contracted no obligation; he is bound only in case he has committed a fraud."

S. 16: "For this reason jurisprudence has decided that lawyers who are mistaken in consultations given to their clients are exempt from responsibility in all cases where they have not been guilty of fraud to induce them in error."

S. 17: "What we say of lawyers must be applied to notaries, stock brokers, and others who communicate their opinion upon a transaction to a client who asks them. It is another case of the rule: *Nemo ex consilio obligatur.*"

In *Dalloz Codes Annotes* under article C. N. 1984, p. 1000, Nos. 43, 44:

"Mandate is different from advice. The mandatary is bound to carry out the mission he has accepted, while he who receives an advice on the contrary, is free to follow or to ignore the advice which has been given."

295

S. 62. "In the case of doubt, we must not easily suppose that the one whose mission was only to give advice has desired to go beyond and to make himself a guarantor of success."

See also *Troplong S.* 19; 30 *Dalloz Rep. de Leg., p.* 632, *S.* 11:

"Finally it is certain that in case of doubt concerning the intention of the parties, the Judge must cast aside mandate."

S. 12: "There is also a great difference between mandate and advice." 4 *Pothier, pp.* 215-218, *Secs.* 20-21.

Judgment affirmed.

Opinion and decree, April 2nd, 1917.